TURNPIKE AUTHORITY — ACQUISITION OF LAND
The Oklahoma Turnpike Authority is subject to the terms of 27 O.S. 9 [27-9] — 27 O.S. 15 [27-15] (1971), prescribing policy for the acquisition and condemnation of land by the State, and that the provisions of 69 O.S. 1707 [69-1707] and 69 O.S. 1708 [69-1708] (1971) are effective insofar as they are not in conflict with or contradictory to the terms of 27 O.S. 9-15 [27-9-15]. The Attorney General has considered your request for an opinion wherein you ask the following question: "After the effective date July 1, 1972, of the Land Acquisition Act, are the terms of 27 O.S. 9 [27-9] (1971) et seq., applicable to the Oklahoma Turnpike Authority in the acquisition of rights-of-way and other turnpike lands, whether by purchase or condemnation?" The scope of the Land Acquisition Act is defined in 27 O.S. 9 [27-9] (1971), which provides: "The provisions of this Act shall be applicable to the acquisition of real property under the laws of this State for public use in any project or program in which federal, state or local funds are used." (Emphasis added) It is explicit in Section 9 that lands acquired for public rights-of-way through financing of the State are subject to the terms of the Land Acquisition Act. Moreover, the method of financing-revenue bonds does not detract from the applicability of 27 O.S. 9 [27-9] (1971) et seq., as the monies derived from the sale of such bonds would most certainly be characterized as State funds. In 69 O.S. 1707 [69-1707] and 69 O.S. 1708 [69-1708] (1971), the Legislature prescribed guidelines for the acquisition and condemnation of land for the Turnpike Authority; Section 69 O.S. 1707 [69-1707] provides: "The Authority is hereby authorized and empowered to acquire by purchase, or condemnation, land or such interest therein as in its discretion may be necessary for the purpose of establishing, constructing, maintaining and operating turnpike projects or relocation thereof, a facility necessary and incident thereto, or necessary in the restoration of public or private property damaged or destroyed, including borrow areas, detours, channel changes, concession areas, public or private access roads, and deposits of rock, gravel, sand and other road building materials for use in turnpike construction and maintenance, upon such terms and at such price as may be considered by it to be reasonable and can be agreed upon between the Authority and the owner thereof, and to take title thereto in the name of the Authority, provided, that such right and title shall be limited to the surface rights only and shall not include oil or other mineral rights." The provisions of Section 1708, supra, outline substantive procedures to be followed in the condemnation of Turnpike Authority lands. Title 27 O.S. 1971, 9-15 [27-9-15] prescribe policies to be followed in acquiring lands for public purposes. More particularly, the terms of Section 1708, supra, can be characterized as procedural and cumulative in nature. The general policy statement of 69 O.S. 1708 [69-1708](a) (1971) reads: "Except in instances where there are non-resident owners, unknown heirs, imperfect titles, and owners whose whereabouts cannot be ascertained with reasonable diligence, the Authority shall give the owner an opportunity to sell the necessary land or interest therein to the Authority before resort to condemnation may be had." A corresponding statement of policy can be found in 27 O.S. 13 [27-13] (1971), which provides: "Any person, agency or other entity requiring real property for any public project or program described in Section 1 of this Act shall comply with the following policies: "1. Every reasonable effort shall be made to acquire, expeditiously, real property by negotiation . . ." Generally, the terms of 27 O.S. 9-15 [27-9-15] (1971), prescribe the rights of owners of properties sought to be condemned; whereas, 69 O.S. 1708 [69-1708] (1971) prescribes the procedural aspects of condemnation proceedings. The policy statements of both statutes are congruent in that the condemning authority is directed to exhaust every effort in securing the said property by negotiation. Title 27 O.S. 10 [27-10] and 27 O.S. 12 [27-12] (1971), provide for reimbursement of acquisition expenses; these sections read, respectively: "Any person, agency or other entity acquiring real property for public use under the laws of this State shall as soon as practicable after the date of payment of the purchase price or the date of deposit into court funds to satisfy the award of compensation in a condemnation proceeding to acquire real property, whichever is earlier, reimburse the owner for expenses he necessarily incurred for: "1. Recording fees, transfer taxes and similar expenses incidental to conveying such real property; "2. Penalty costs for prepayment for any preexisting recorded mortgage entered into in good faith encumbering such real property; and "3. The pro rata portion of real property taxes paid which are allocable to a period subsequent to the date of vesting title in the acquiring entity, or the effective date of possession of such real property by the acquiring entity, whichever is earlier. "Where a condemnation proceeding is instituted by any person, agency or other entity to acquire real property for use as provided in Section 1 and "1. The final judgment is that the real property cannot be acquired by condemnation; or "2. The proceeding is abandoned; the owner of any right, title or interest in such real property shall be paid such sum as is the opinion of the court will reimburse such owner for his reasonable attorney, appraisal and engineering fees actually incurred because of the condemnation proceedings. Such determination by the court shall be appealable to the Supreme Court in the same manner as any other final order. The final award of such sums will be paid by the person, agency or other entity which sought to condemn the property." Although, these sections make additional requirements and contemplate that the State will reimburse the owner of condemned land for whatever expenses he incurs in condemnation proceedings, these sections are not contrary to the provisions of 69 O.S. 1708 [69-1708] (1971). It appearing that the terms of 27 O.S. 1971 9-15 [27-9-15] and 69 O.S. 1971 1707 [69-1707] and 1708 [69-1708] are compatible, insofar as all sections provide for methods of acquisition by the State. The terms of 27 O.S. 1971, 9-15 [27-9-15] are applicable to land acquired by the Oklahoma Turnpike Authority, and the specific procedures outlined in Section 69 O.S. 1707 [69-1707] and 69 O.S. 1708 [69-1708] govern to the extent that they correspond with the terms of 27 O.S. 1971, 9-15 [27-9-15]. It is, therefore, the opinion of the Attorney General that as of the effective date of July 1, 1972, the Oklahoma Turnpike Authority is subject to the terms of 27 O.S. 9 [27-9] — 27 O.S. 15 [27-15] (1971), prescribing policy for the acquisition and condemnation of land by the State, and that the provisions of 69 O.S. 1707 [69-1707] and 69 O.S. 1708 [69-1708] (1971) are effective insofar as they are not in conflict with or contradictory to the terms of 27 O.S. 1971, 9-15 [27-9-15]. (Michael D. Tinney)